COURT OF APPEALS
DECISION
DATED AND FILED

March 24, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP2331-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CF96

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

ZACHARY SCOTT SCHULLO,

     DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Affirmed*.

Before White, C.J., Colón, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM.  Zachary Scott Schullo appeals from a judgment of conviction for one count of possession of child pornography.  On appeal, Schullo argues that the circuit court erroneously denied his motion to suppress and his motion to reconsider.  For the reasons set forth below, we affirm.[1]

## BACKGROUND

¶2   On January 4, 2022, Schullo's girlfriend took a flash drive to the police station after discovering that the flash drive contained what she believed to be roughly 100 pornographic images and videos of children.  She further reported to police that she found the flash drive on Schullo's nightstand in the couple's bedroom in their home.  An officer verified the report by opening files on the flash drive.  Schullo was then arrested, and Schullo's girlfriend consented to a search of their house during which officers seized several additional electronic devices.  The officers then received a warrant to search the flash drive and other seized devices, which revealed hundreds of pornographic materials involving children.  As a result, the State charged Schullo on January 7, 2022, with ten counts of possession of child pornography.

¶3   Schullo subsequently moved to suppress the contents of the flash drive his girlfriend took to the police station because the officer's search of the flash drive expanded the scope of the private search performed by his girlfriend. The circuit court held a hearing on Schullo's motion at which the officer who viewed the contents of the flash drive testified.  The officer testified that he

---

[1] The Honorable Glenn H. Yamahiro entered the order denying Schullo's original motion to suppress.  The Honorable Jean M. Kies denied Schullo's additional attempts to suppress evidence, took Schullo's plea, entered the judgment of conviction, and imposed the sentence.  For ease of reference, we refer to each as the circuit court.

opened the flash drive in an effort to verify the complaint made by Schullo's girlfriend. The officer estimated that, when he opened the flash drive, he saw that the flash drive contained over 100 images and videos of what appeared to be pornographic materials involving children. In further examining the contents of the flash drive, he indicated that he did not open any of the video files for viewing, but he did open approximately three or four of the images on the flash drive. In total, the officer indicated he spent five to ten minutes looking at the contents of the flash drive.

¶4 Based on the officer's testimony, the circuit court denied Schullo's motion and found that the officer did not exceed the scope of the private search done by Schullo's girlfriend and, alternatively, that officers would have inevitably discovered the images on the flash drive as a result of the subsequent search warrant that was issued for the contents of the flash drive.

¶5 Schullo moved to have the circuit court reconsider its decision, and he argued that the officer's body camera video showed that he viewed more images on the flash drive than he indicated at the hearing. Thus, Schullo argued that the circuit court's decision was based on a manifest error of law or fact because the video clearly depicted that the officer greatly exceeded the scope of the private search by viewing approximately 35 images on the flash drive when Schullo's girlfriend estimated that she viewed only three or four images on the flash drive.

¶6 The circuit court noted that the body camera footage was not new evidence and then disagreed that any mistake of law or fact existed. In so doing, the circuit court found that "it [was] not necessary in order for [it] to make this decision in this case to watch that video" because "[i]n the end, I am not really

3

sure that that matters as much as the [d]efense would assert." "The facts here show that regardless if it is four images or 24 images that the officer saw, and he didn't look at the entirety of the flash drive, he only looked at limited amounts. I think what he did was reasonable." Thus, the circuit court denied Schullo's motion to reconsider.

¶7 Schullo then filed a second motion to suppress, and he sought to suppress the evidence recovered from searching the devices found at his home. In his second motion, he argued that his girlfriend did not have the authority to consent to the seizure of electronic devices found in the couple's shared home. Schullo specifically challenged his girlfriend's ability to consent to the seizure of a second flash drive and computer recovered from his briefcase in the couple's home office.

¶8 At the hearing on the motion, Schullo's girlfriend testified that she bought a home with Schullo. She further testified that there were no rooms in the house that only one person was allowed to use and she regularly used the home office where Schullo's devices were found. She described that, when officers arrived at her house to arrest Schullo and conduct a search of the house, she went through the house and "stacked all of his stuff up right there" to give the officers "everything that [she] knew was his." The officers, however, did not direct her to search the house, and she did this because she wanted to help and "get any and all items that may contain that stuff … out of [her] home." Based on the testimony provided, the circuit court denied Schullo's second motion to suppress.

¶9 Schullo eventually entered a guilty plea to one count of possession of child pornography, and the circuit court sentenced Schullo to five years of

4

imprisonment, bifurcated as three years of initial confinement and two years of extended supervision. Schullo appeals.

## DISCUSSION

¶10 On appeal, Schullo argues that the circuit court erroneously denied his efforts to suppress evidence of child pornography on the flash drive and other electronic devices and also erroneously denied his motion to reconsider. We review a circuit court's denial of a motion to suppress evidence using a two-step standard. *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. We will uphold the circuit court's findings of fact unless they are clearly erroneous, and we review independently the application of the facts to the constitutional principles. *Id.* We review the circuit court's decision on Schullo's motion for reconsideration for an erroneous exercise of discretion. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853.

### I.    Search of the Flash Drive at the Police Station

¶11 Schullo argues that the circuit court erroneously denied his first motion to suppress because the search of the flash drive performed at the police station to verify the complaint expanded the scope of the private search initially performed by Schullo's girlfriend.[2]

---

[2] Schullo argues on appeal that his girlfriend lacked the authority to consent to a search of the flash drive at the police station. While Schullo argued below that his girlfriend could not consent to a search and seizure of the additional electronic devices at his house, his argument as to consent has been raised for the first time on appeal. "The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal." *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). Therefore, we do not address Schullo's argument regarding consent.

¶12     The parties do not dispute that the files viewed by Schullo's girlfriend amounted to a private search of the flash drive. "Private searches are not subject to the Fourth Amendment's protections because the Fourth Amendment applies only to government action." *State v. Payano-Romano*, 2006 WI 47, ¶17, 290 Wis. 2d 380, 714 N.W.2d 548. Rather, the issue turns on whether the officers expanded the scope of the private search done by Schullo's girlfriend.

¶13     "After an initial invasion of privacy by private action, 'additional invasions of … privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search.'" *State v. Berggren*, 2009 WI App 82, ¶20, 320 Wis. 2d 209, 769 N.W.2d 110 (quoting *United States v. Jacobsen*, 466 U.S. 109, 115 (1984)). As is common in the Fourth Amendment context, the touchstone of whether the officer exceeded the scope of the private search is reasonableness. *See Jacobsen*, 466 U.S. at 114-15, 121-22. In this case, we conclude that the search performed by the officer at the police station was reasonable and did not expand the scope of the private search conducted by Schullo's girlfriend to a degree that violated Schullo's Fourth Amendment rights.

¶14     Schullo's girlfriend brought a flash drive containing pornographic images to the police station. She informed officers that she opened the flash drive and viewed files on the flash drive. She did not, however, tell officers exactly which files she viewed, nor did she provide an exact number of files that she viewed. One of the officers at the police station then attempted to verify the contents of the flash drive by opening the flash drive and viewing enough files to verify that the flash drive did indeed contain pornographic images of children, as Schullo's girlfriend reported. In total, the officer spent a handful of minutes looking at the contents of the flash drive. At this point, the officer stopped, and police obtained a search warrant before viewing anymore files on the flash drive.

6

Overall, we conclude that the officer's conduct in verifying the contents of the flash drive was reasonable and did not expand the scope of the private search in a way that violated Schullo's Fourth Amendment rights. *See Berggren*, 320 Wis. 2d 209, ¶20; *see also State v. Cameron*, 2012 WI App 93, ¶27, 344 Wis. 2d 101, 820 N.W.2d 433 ("The agent's viewing of what a private party had freely made available did not violate the Fourth Amendment." (quoting *Jacobsen*, 466 U.S. at 119)).

¶15    Schullo nevertheless argues that the scope of the private search was expanded because the officer did not view the exact files viewed by Schullo's girlfriend. While it would simplify the analysis if the officer viewed the exact same files, the fact that the officer may not have viewed the exact files viewed by Schullo's girlfriend does not automatically amount to a violation of Schullo's Fourth Amendment rights. "The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred." *Jacobsen*, 466 U.S. at 115. Based on the facts as they existed at the time of the officer's search of the flash drive, the officer's conduct was reasonable, and the officer's conduct "did not infringe any constitutionally protected privacy interest that had not already been frustrated as the result of private conduct." *See id.* at 126.

¶16    The State raises alternative arguments, including the argument that the doctrine of inevitable discovery applies, to any expansion in the scope of the private search. However, as a result of our conclusion, we do not reach these alternative arguments raised by the State. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

## II.     Seizure of Additional Electronic Devices

¶17     Schullo next argues that his girlfriend lacked the authority to consent to a search of his home where the officers seized additional electronic devices later determined to also contain child pornography.

¶18     "Under certain circumstances, consent to search may be given by a third person—that is, by a person other than the subject of the search." *State v. Tomlinson*, 2002 WI 91, ¶22, 254 Wis. 2d 502, 648 N.W.2d 367. The authority of a third party to provide consent in the Fourth Amendment context "rests … on mutual use of the property by persons generally having joint access or control for most purposes." *State v. Sobczak*, 2013 WI 52, ¶14, 347 Wis. 2d 724, 833 N.W.2d 59 (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)). Additionally, an officer may rely on "the third party's apparent common authority, if such reliance is reasonable." *Tomlinson*, 254 Wis. 2d 502, ¶25.

¶19     In this case, Schullo's girlfriend testified that she shared the home with Schullo and there were no rooms that she was prohibited from using. She further testified that she used the home office where the additional electronic devices were found and even that she used some of these devices herself. The testimony also established that Schullo's girlfriend located Schullo's devices on her own accord and turned the devices over to the officers without the officers directing her to do so.

¶20     Based on this testimony, Schullo's girlfriend had the authority to provide consent for the officers to search the home and seize Schullo's electronic devices. The officers further acted in reasonable reliance on her authority to consent to the search of the home and seizure of Schullo's additional electronic devices, and we are not persuaded by Schullo's argument to the contrary.

¶21   As before, the State additionally raises alternative arguments as it relates to the additional electronic devices seized from Schullo's home, and as a result of our conclusion, we do not reach these alternative arguments raised by the State. *See **Blalock***, 150 Wis. 2d at 703.

### III.   Motion to Reconsider

¶22   Schullo last argues that the circuit court erroneously denied his motion to reconsider. We disagree.

¶23   "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." ***Koepsell's***, 275 Wis. 2d 397, ¶44. In this case, the circuit court found that Schullo could not establish either.

¶24   In rendering its decision, the circuit court first noted the defense's concession that this video footage was missed when reviewing discovery, and therefore, the circuit court found that the video footage of the officer reviewing the contents of the flash drive was not newly discovered evidence. Rather, it was evidence given to the defense prior to the hearing, and the defense could have introduced the video footage at the time of the original hearing on the motion to suppress.

¶25   The circuit court further found that there was no manifest error of law or fact because it would not have made a difference whether the officer viewed four or five images, as his testimony suggested, or 35 images, as the defense asserts the video footage indicates. Instead, the key was that the officer limited his viewing of the files on the flash drive in a reasonable manner. Because

he did so, any discrepancy between the officer's testimony and the video footage is irrelevant.

¶26 In short, we discern no error in the circuit court's findings and denial of Schullo's motion for reconsideration.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.